29 C.C.P.A.(Patents)

### In re FISCHER.

Patent Appeal No. 4562.

Court of Customs and Patent Appeals.

Feb. 24, 1942.

Albert F. Robinson, of Lockland, Ohio, for appellant.

W. W. Cochran, of Washington, D. C. (Clarence W. Moore, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

Appellant filed an application in the United States Patent Office for a patent relating to waterproof slabs and the method of making the same. Division was required between the method and the article claims. The article claims were allowed in a divisional application. The Primary Examiner rejected all the method claims, 1 to 4, inclusive, 8 to 14, inclusive, and 25 to 28, inclusive, and his decision so rejecting said claims was affirmed upon appeal to the Board of Appeals. Appellant has appealed here from the decision of the board.

The references relied upon are:

Woodley, 1,156,122, October 12, 1915.

Tucker, 1,220,293, March 27, 1917.

Weiss, 1,334,061, March 16, 1920.

Claim 1 will be regarded by us as illustrative. Specific features of the other claims will be noted hereinafter. Claim 1 follows: "1. The herein described method of producing preformed construction block-like strips containing a plastic waterproof binder and shredded waste bituminized fabrics which comprises collecting pieces of saturated felt in a mixing apparatus which is heated to a temperature sufficient to melt asphalt to a semi-fluid or fluid consistency, agitating the material in the mixing apparatus while said apparatus is heated, removing the material from the mixer after agitating for a predetermined time, and converting the material while in a warm, plastic, flowable condition into preformed construction material of the class described."

It has been over fifteen years since the application was filed. Much time was taken up as a result of the requirement for division as well as interference proceedings in which appellant's application was involved. The ex parte prosecution of the method claims involved numerous amendments, appeals, petitions, remands and withdrawals of certain grounds of rejection, all of which necessarily make the record before us considerably complicated.

The alleged invention is described in appellant's brief as follows:

"This invention * * * relates to producing preformed block like strips containing a plastic waterproof binder and shredded waste asphalt roofing scrap. Small pieces of the bituminized fabric scrap are placed in a container which is heated sufficiently to melt the asphalt to a fluid or semi-fluid condition. The batch is agitated or mixed, while heated, to reduce the roofing scrap to a plastic mass. The mass is formed, while in a warm plastic, flowable condition into a strip. There is no disintegration of the fibers. Only the fabric is shredded by having the fibers composing same pulled apart and separated.
* * *

"The mass is formed into shape by any suitable forming means such as an extrusion machine, hydraulic press or the like.
* * *"

Appellant in his brief groups the claims as follows:

"Claims 1, 2, 3, 9, 10, 11, 14, 25, 26, 27 and 28 are the broadest ones, relating to a method of making strips containing a waterproof plastic binder and *shredded* waste bituminized fabrics by subjecting pieces of saturated felt to a heating apparatus which is heated to a temperature sufficient to melt the asphalt to a *semi-fluid or fluid consistency*, agitating the material for a predetermined time *while the apparatus is heated,* and then forming the mixture into shape *while in a warm plastic condition.* [Italics quoted]·

"Claims 1, 2, 3, 9, 10, 11, 27 and 28 definitely provide that the product produced contains a waste fabric component which is *shredded.* While claims 25 and 26 do not definitely describe the resulting product as containing *shredded* saturated felt, the steps of the process in treating the saturated felt are such that it is shredded. [Italics quoted]

"Claim 4 is substantially the same as claim 3 except for the step of forming the warm plastic mass into form, which is described as *extruding.* [Italics quoted]

"Claims 8, 12 and 13 include in the process the use of *mineral surfaced* roofing scrap. Claim 8 provides for a measured quantity of *mineral surfaced* roofing scrap and a measured quantity of *non-mineral surfaced* roofing scrap. Claim 12 provides for the use of saturated and coated felt surfaced with *granular* material. Claim 13, like claim 8, includes the use of both *granular* and non-granular *surfaced asphalt roofing scrap.* [Italics quoted]"

It will be noted that claim 4 is placed in a group by itself and calls for the step of extrusion. This claim was rejected by the examiner on the issue of an interference, and appellant in this court moved to dismiss his appeal as to this claim, and the motion will be granted.

The rejection by the examiner of the other claims here on appeal is in the following language:

"Claims 1 to 3 are rejected as unpatentable over the patent to Woodley which discloses the process recited. The patentee discloses the process in which asphalt saturated felt scrap * * * is agitated in a mixer while in a semi-solid condition and then formed on rolls. It is not seen that asphalt in a semi-fluid condition differs from asphalt in a semi-solid condition. Woodley carries out his agitating step with heated

material. It is obvious to heat the mixer to prevent the material from cooling.

* * *

"Claim 8 is rejected in the same way as claims 1 to 3. The recitation of the addition of mineral surfaced scrap is not seen to alter the process.

"Claims 9 to 13 are rejected in the same way as claims 1 to 3. Whether the material is first heated to its maximum temperature and then agitated or the temperature gradually raised during mixing is not seen to be anything more than a matter of choice.

* * *

"Claims 25 and 26 are rejected as fully met by the patent to Woodley.

* * *

"Claims 1 to 4, 8 to 14, and 25 to 28 are further rejected as unpatentable over the patent to Weiss or the patent to Tucker. Each of these patentees discloses a process in which a mixture of fibrous materials and asphalt is mixed while the asphalt is in a fluid or semi-fluid state and then formed into articles. Tucker discloses this process as carried out with previously saturated material. It is not seen that the process is altered by substituting saturated felt scrap for the fibrous matter of the patentees. Weiss discloses the extruding step.

"Claims 1 to 4, 8 to 14, and 25 to 28 are further rejected as unpatentable over the patent to Woodley in view of either the Weiss or Tucker patent. No invention is seen in carrying out Woodley's mixing step with fluid material as taught by Tucker and Weiss. It is obvious from the art cited that either method of mixing might be used."

Upon appeal to the Board of Appeals, it, in part, said:

"Claims 1, 2 and 3 stand rejected on the Woodley patent. This patent discloses forming a fibrous composition by adding residuum oil to asphalt. The mixture is heated to 400° F. to liquify it. Fibrous material or rubber roofing scrap or tarred felt scrap is added to the hot mixture. The mixture is cooled somewhat by this addition. The entire mass is kneaded in a mixing machine so that each fiber is coated and a homogeneous product is obtained. The product may be rolled into a sheet.

"These claims call for heating to a temperature sufficient to melt asphalt to a semi-fluid or fluid consistency. The patentee kneads the mixture while it is in a semi-fluid condition. It is believed that the patentee would obtain substantially the same action on the fibers of the scrap by his kneading operation of the semi-liquid material as applicant obtains. We fail to see any patentable distinction between what is defined by these claims and what the patentee discloses.

* * *

"Claims 8–14, 25 and 26 stand rejected on the Woodley patent for the same reasons as claims 1, 2 and 3. Many of these claims are quite broad. Claim 12 refers to felt scrap surfaced with granular material and claims 8 and 13 refer to scrap collected from both granular and non-granular surfaced asphalt roofing. It is our view that all of these claims are unpatentable over the Woodley patent. It is believed that the recitation of the particular type of scrap mentioned in claims 8, 12 and 13 involves nothing of a patentable distinction over this patent because the patentee contemplates using rubber roofing scrap or tarred felt scrap as a source of the fibrous material. *It is quite customary to have granular material applied to rubber roofing and no doubt the patentee intends to include this type of roofing as part of his* invention. [Italics ours]

"All of the claims have also been rejected on Weiss in view of Tucker or on Woodley in view of Weiss or Tucker. In the Weiss and Tucker patent the fibrous material is not obtained from roofing scrap. However, in view of Woodley it would not be inventive to use roofing scrap instead of fibrous material mentioned by Weiss and Tucker. It seems to us that the claims are so broadly drawn that there is clearly no patentable distinction specified in them over these patents.

"It might be added in connection with claims 9, 12 and 13 that they do not involve the use of heat in treating the scrap. Hence they are very broad."

The above decision of the board was rendered on September 9, 1940. Request for reconsideration was made on October 1, 1940, the board being requested to reconsider the claims involved in the appeal and "also for further information in accordance with Rules 66 and/or 76 of the Patent Office, 35 U.S.C.A. Appendix, as set forth in the decisions of In re Eliot, Cust. & Pat.App., 76 F.2d 309; In re Lewis, Cust. & Pat.App., 96 F.2d 1009; and In re Greider et al., Cust. & Pat.App., 113 F.2d 122.

The further information was requested concerning the foregoing italicized state-

ment in the board's opinion. On October 22, 1940, the board rendered a decision on reconsideration, and concerning the request for information with respect to the statement that it was quite customary to have granular material applied to rubber roofing said: "Applicant thinks that our statement that it is quite customary to have granulated material applied to roofing needs proof. This has been the well-known practice, at least as far back as 1910, and perhaps prior to that time. Such a statement would appear to need no proof."

Appellant on November 14, 1940, petitioned the commissioner to require compliance with Rules 66 and/or 76, and he stated in his decision that: "It appears that applicant's request for an affidavit under Rules 66 and 76 should have been complied with. However, this petition was filed after applicant had filed a notice of appeal to the United States Court of Customs and Patent Appeals, together with a statement of his reasons for appeal. Under these circumstances the Commissioner is without jurisdiction to consider the petition (Ex part Colin, 519 O.G. 797). The petitioner's arguments as to alleged distinctions between the situation in the Colin case and that presented here have been carefully considered, but no reason has been found which would justify a holding that the Commissioner has jurisdiction to consider the present petition."

The board also in a decision on this question stated that since the said appeal to this court had been filed (on October 24, 1940), it likewise had no jurisdiction to consider the question.

Appellant has assigned error against the action of the board in that: "5. There was error in holding it quite customary to have granular material applied to rubber roofing, without support of such statement of fact under the provisions of Rules 66 or 76."

On this phase of the case it is our view that the board could well have cited patents contained in the record before it, which is now before us, showing that it was old and customary to have granular material applied to rubber roofing. Woodley, as of October 12, 1915, points out that: "The sheet may if desired be coated with a superficial layer of suitable bituminous material, such surface receiving in some cases a finishing coating of soapstone, talc, sand, gravel, etc."

The same is true of the MacDonald patent, No. 1,831,779, November 10, 1931, which was then before the board. The Fischer patent, No. 2,204,533, June 11, 1940, which contains the allowed article claims involved in the application of which the instant application is a division, also called attention to the fact that: "* * * Frequently the scrap will be surfaced with subdivided mineral material, such as mica, slate particles, rock particles, or even small pebbles as a result of cutting the tabs from sheet material which has been surfaced with such subdivided mineral substance."

As we construe the language used by the board, it did not intend to convey the impression that the limitation in claims 8, 12 and 13 with reference to the starting material mentioned in the claims being composed of both granular and non-granular surfaced asphalt roofing, scraps was met by common knowledge of what was customary with reference to applying granular material to rubber roofing. It is our view that the board merely meant to say that rubber roofing which contained granular material as a surface coating was commonly known and that Woodley evidently intended to include this kind of roofing scrap in his invention. So construing the language of the board, we are of the opinion that in view of the instant record which was before the board, disclosing the subject matter the board had under consideration, it was not necessary for it to submit affidavits or furnish references showing the same, and while the board might well have pointed this fact out to the instant applicant, we see no reversible error in its failure to do so.

The board's decision which we are reviewing affirms that of the examiner in rejecting claims 1, 2 and 3 on the Woodley patent. It points out, as is shown in the hereinbefore quoted part of its decision, that in that patent there is disclosed the forming of a fibrous composition by adding residuum oil to asphalt. Woodley is dealing with scrap material. The board points out that the mixture is heated to 400° F. to liquify it. Woodley's fibrous material or roofing scrap or tarred felt scrap is made a part of the hot mixture. The mixture is cooled somewhat by the addition of the scrap to the hot liquid. The entire mass is kneaded in a mixing machine so that each fiber is coated and a homogeneous product is obtained. The patent discloses that this product may then be rolled into a sheet.

The board said: "These claims call for heating to a temperature sufficient to melt asphalt to a semi-fluid or fluid consistency. The patentee kneads the mixture while in a semi-fluid condition. It is believed that the patentee would obtain substantially the same action on the fibers of the scrap by his kneading operation of the semi-liquid material as applicant obtains. We fail to see any patentable distinction between what is defined by these claims and what the patentee discloses."

We concur in this conclusion, that is to say, the slight differences in the process of the applicant would not amount to invention over that of Woodley.

Claims 8 to 14, inclusive, and 25 and 26 were also rejected by the examiner on Woodley for the same reasons as claims 1, 2 and 3. The board said: " * * * Many of these claims are quite broad. Claim 12 refers to felt scrap surfaced with granular material and claims 8 and 13 refer to scrap collected from both granular and non-granular surfaced asphalt roofing. It is our view that all of these claims are unpatentable over the Woodley patent. * * *"

We think the board was right in this conclusion. It did not involve invention to apply appellant's method, which did not differ inventively from that of Woodley, to felt-surfaced scrap or to granular-surfaced scrap. The method was not changed by applying it to a somewhat different material. As we said in Re Williams, 87 F.2d 499, 501, 24 C.C.P.A., Patents, 861: "A process does not become patentably new merely because it is applied to a different object or material. [citing cases]"

The board approved the examiner's rejection of all the claims on Weiss in view of Tucker, or on Woodley in view of Weiss or Tucker, and we refer to this subject matter with a view of considering the board's action in connection with claims 27 and 28. The examiner in rejecting the claims on Weiss or Tucker points out: "* * * Each of these patentees discloses a process in which a mixture of fibrous materials and asphalt is mixed while the asphalt is in a fluid or semi-fluid state and then formed into articles. Tucker discloses

this process as carried out with previously saturated material. It is not seen that the process is altered by substituting saturated felt scrap for the fibrous matter of the patentees. Weiss discloses the extruding step."

We agree with the examiner in this particular, as did the board, and it is not necessary, therefore, for us to consider in detail the further rejection of claims 27 and 28 on Woodley in view of Weiss or Tucker. The examiner, however, in concluding the rejection of certain claims, including 27 and 28, on Woodley in view of Weiss or Tucker, said: " * * * It is obvious from the art cited that either method of mixing might be used."

With this conclusion we agree.

From the foregoing it follows that none of appellant's appealed claims define invention over the cited prior art.

One further argument of appellant's counsel, on a subject matter covered by his reasons of appeal, is to the effect that the board erred in not explaining the seeming inconsistency in not allowing the method claims after having allowed the article claims. It appears that the prior art here involved was not submitted to the Board of Appeals in Fischer's divisional case where the article claims were allowed, and we deem it unnecessary to go into a lengthy discussion as to the reasons for allowing certain article claims. It is sufficient to say as we did in Re McCabe, 74 F.2d 758, 760, 22 C.C.P.A., Patents, 877: "We think the issue before us must be determined not by comparing the rejected claims with the allowed claims for points of similarity or dissimilarity, but by a comparison of them with the prior art cited."

Similar rulings have been made by this court on many occasions, and it is not necessary here to cite the decisions in which they appear. We think that the board made a satisfactory answer to this contention of appellant and we find no reversible error on the part of the board in this respect.

The appeal as to claim 4 is dismissed, and the decision of the Board of Appeals, affirming that of the examiner as to the remaining claims, is affirmed.

Affirmed.